

# HELEN F. DALTON & ASSOCIATES, P.C.
## ATTORNEYS AT LAW

80-02 Kew Gardens Road, Suite 601, Kew Gardens, NY 11415

Tel. (718) 263-9591 Fax. (718) 263-9598

November 11, 2021

**Via ECF**
The Honorable Judge Anne Y. Shields
United States District Court
Eastern District of New York
100 Federal Plaza
Central Islip, New York 11715

Re: **Puya v. QV Management Corp., et al.**
       **20-CV-3309 (AYS)**

Dear Judge Shields:

Our office represents Yonny Puya ("Plaintiff" or "Puya") and we submit this motion jointly with counsel for QV Management Corp. and Keyoumars Keypor (collectively, "the Defendants"), requesting the Court's approval of the parties' Settlement Agreement. The terms of the parties' Settlement Agreement, attached hereto as **Exhibit 1**, were reached following a Court-annexed mediation and months-long negotiation process thereafter between the parties.

The parties submit this motion in support of their position that the Settlement Agreement is fair and reasonable and does not raise any of the concerns cited in *Cheeks v. Freeport Pancake House, Inc*., 796 F.3d 199 (2d Cir. 2015). The parties address the monetary and non-monetary terms as well as Plaintiffs' counsel's requested attorneys' fees and respectfully request that the Court So Order or approve the Settlement Agreement.

**I.      The Monetary Terms of the Settlement Agreement are Fair and Reasonable**

**a. The Settlement Amount**

The parties agreed to resolve this matter for the amount of $70,000.00 payable to the Plaintiff, inclusive of attorneys' fees. The settlement will be paid in three equal monthly installments following Court approval of the Settlement Agreement.

**b. Plaintiff's Position**

Plaintiff brought this action against Defendants alleging violations of the Fair Labor Standards Act ("FLSA") and New York Labor Laws ("NYLL"). In general, Plaintiff alleged that

he was not paid proper overtime wages when he was required to work in excess of 40 hours per workweek.

Plaintiff was employed by Defendants as a live-in superintendent from in or around 2012 until in or around February 2020. As the Complaint was filed in July 2020, the relevant statutory period under the NYLL commenced in July 2014. Plaintiff's primary duties were as a superintendent and handyman; Plaintiff was responsible for painting, cleaning, shoveling snow, taking out the garbage, and performing other miscellaneous tasks related to his employment as a superintendent and handyman.

Plaintiff alleged that he was regularly required to work a schedule of seventy-seven (77) hours per week. Plaintiff also alleged that he was required to perform work outside of his regular schedule for approximately 10 hours per week due to emergencies and other issues that would arise outside of his regular working hours. As such, Plaintiff alleged that he worked a total of approximately eighty-seven (87) hours of work per week.

Plaintiff alleges that he was paid by Defendants a flat bi-weekly rate in the amount of $850.00 every two (2) weeks during the relevant statutory period and that this bi-weekly salary failed to properly compensate him for approximately 47 hours of overtime worked per week.

Plaintiff acknowledged the defenses raised by Defendants including the possibility of being exempt from overtime compensation under NYLL as a live-in superintendent pursuant to 12 NYCRR § 141-1.2. For the three-year statutory period under the FLSA, Plaintiff alleged approximately $125,000.00 in unpaid wages. Plaintiff also alleged that he was entitled to recovery for wage statement and wage notice violations under NYLL.

Although Plaintiff was confident that he could succeed on his claims under the FLSA at the time of trial, he recognized the risks of continued litigation. Plaintiff was acknowledged the factual disputes, particularly over the number of hours Plaintiff worked each week and the appropriate methodology for calculating any alleged overtime owed to Plaintiff. Plaintiff was aware of the potential witness testimony to be offered by Defendants and also considered Defendants' financial status, which was discussed in great detail at the mediation and subsequent negotiations. These conversations raised concerns about whether Plaintiff would be able to collect on a judgment even if he were to prevail at a trial at a much later date. As such, Plaintiff preferred a guaranteed payment through a carefully-negotiated settlement in the near future rather than face the uncertainties and risks of litigation and the anticipated delay of trial.

  c. **Defendants' Position**

Defendants assert that Plaintiff is not entitled to any overtime pursuant to the New York Labor Law as janitors in residential buildings are exempt from overtime. 12 N.Y.C.C.R. § 141-1.4. As Plaintiff was the sole janitor in charge of the care and maintenance of the Building, he would be exempt from overtime pursuant to the New York Labor Law. 12 N.Y.C.C.R. § 141-3.4. Accordingly, it is Defendants' position that Plaintiff's overtime claims would at best go back two or three years (if willful) pursuant to the FLSA which would significantly decrease any damages Plaintiff would be entitled. Further, it is Defendants' position that the New York Labor Law treats janitors differently than other minimum wage employees as they are only entitled to be paid at a

rate pursuant to the number of units in the building. See 12 N.Y.C.C.R. § 141-1.5 and 1.6. Defendants also assert that at best, Plaintiff would be entitled to overtime pursuant to the FLSA at the overtime rate prescribed by the FLSA ($10.88 an hour). Further, pursuant to the FLSA, Defendants would be able to take a credit for the reasonable value and fair cost for the lodging provided to Plaintiff.

Further, Defendants dispute that Plaintiff was not properly paid overtime or minimum wage and have asserted that Plaintiff never worked more than 40 hours in a week and that Plaintiff was paid for all hours worked. Defendants' position is that when Plaintiff reported that he worked more hours, Plaintiff was paid for such hours. Defendants strongly dispute the number of hours claimed by Plaintiff and assert that the job duties Plaintiff were assigned would require substantially fewer hours then the number of hours claimed by Plaintiff, and that Plaintiff's claim that he worked 77 or 87 hours a week is unbelievable. Defendants' position is that Plaintiff in fact never worked over 40 hours a week and Plaintiff has no valid overtime claim. Defendants further note that courts considering claims by janitors/superintendents have recognized the difficulty by plaintiffs to demonstrate that they actually worked overtime and/or the hours claimed. See e.g., *Daniels v. 1710 Realty, LLC* 2011 WL 3648245 (E.D.N.Y. 2011). Further, Defendants dispute Plaintiff's position that the amount paid each week was the same and allege that Defendants had no knowledge that Plaintiff worked over 40 hours a week and/or made Plaintiff "suffer work". Further, Defendants assert that to the extent there were any wage violations, such violations would not warrant liquidated damages because Defendants believed in good faith that they complied with the law.

Defendants do not dispute that such notices and wage statements were not provided to Plaintiff. However, Defendants contend as an affirmative defense that Plaintiff is not entitled to such statutory damages since Plaintiff was paid all compensation he was entitled to pursuant to law.

### d. The Settlement Amount is Fair and Reasonable

FLSA claims may only be settled and dismissed with prejudice under Rule 41 if they are approved by the Court. *Cheeks v. Freeport Pancake House, Inc.,* 796 F.3d 199, 206-207 (2d Cir. 2015). "Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes." *Kochilas v. Nat'l Merch. Servs., Inc.*, 2015 WL 5821631, at *7 (E.D.N.Y. Oct. 2, 2015) (citation omitted). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of settlement." *Id*. (citation omitted). Furthermore, "[i]f the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved." *Id*. (citations omitted). "Generally, there is a strong presumption in favor of finding a settlement fair, as the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Lliguichuzhca v. Cinema 60, LLC,* 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013) (citation and internal quotation marks omitted).

The parties have agreed to settle all claims asserted in this matter for $70,000.00. The parties believe that this amount is reasonable considering the claims and defenses asserted and the fact that the terms of the Settlement Agreement was achieved through a months-long negotiation process between counsel who specialize in this area of law. The parties had genuine, bona fide

disputes over the number of hours worked by Plaintiff and the number of days actually worked by Plaintiff, as well as to whether Plaintiff has a bona fide overtime claim pursuant to the New York Labor Law, but both sides made compromises on their positions in order to achieve a fair and reasonable settlement. Additionally, the settlement amount allows Plaintiff to recover a significant portion of his alleged unpaid wages – a figure strongly contested by Defendants.

## II.     The Non-Monetary Terms of the Settlement Agreement are Fair and Reasonable

"In FLSA cases, courts in this District routinely reject release provisions that 'waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues.'" *Gurung v. White Way Threading LLC*, 226 F. Supp. 3d 226, 228 (S.D.N.Y. 2016) (quoting *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 181 (S.D.N.Y. 2015)). Moreover, "[i]n the context of an FLSA case in which the Court has an obligation to police unequal bargaining power between employees and employers, such broad releases are doubly problematic." *Martinez v. Gulluoglu LLC*, No. 15 Civ. 2727 (PAE), 2016 WL 206474, at *2 (S.D.N.Y. Jan. 15, 2016) (quoting *Camacho v. Ess-A-Bagel, Inc.*, No. 14-cv-2592 (LAK), 2014 WL 6985633, at *4 (S.D.N.Y. Dec. 11, 2014)).

Here, the release in Paragraph 3 of the Settlement Agreement ("Release") is appropriately-limited to claims under the FLSA and NYLL and other related wage-and-hour claims that could have been asserted in this litigation. The Release does not raise any concerns regarding unequal bargaining power between Plaintiffs and Defendants and the Release is not overbroad such that there is a concern that Plaintiffs are releasing any and all possible claims against Defendants, including claims completely unrelated to the claims asserted in this action.

Furthermore, the Settlement Agreement does not contain any confidentiality provision that would otherwise preclude the parties from openly discussing their experiences litigating this matter as rejected by *Cheeks*. The parties include a non-disparagement clause in Paragraph 5, however, the clause includes the following carve-out: "[n]othing herein contained shall be construed to prohibit PLAINTIFF or DEFENDANTS from making any truthful statements concerning the terms of this Settlement Agreement and/or any truthful statements regarding their experiences litigating this matter."

As the Release is carefully drafted to comply with Second Circuit case law in FLSA matters and there is no confidentiality clause contained in the Settlement Agreement, the parties' position is that the non-monetary terms of the Settlement Agreement are also fair and reasonable and comport with the standards articulated in *Cheeks*.

## III.    Distribution to the Plaintiff and Requested Attorneys' Fees and Expenses

### a.  Distribution to the Plaintiff

The parties agreed to a global settlement of $70,000.00 to resolve all claims asserted in this action. If the Agreement is approved by the Court, Plaintiff will recover $45,908.34, after requested attorneys' fees and reimbursement of expenses.

### b.  Plaintiff's Counsel's Requested Attorneys' Fees and Expenses

Plaintiff's counsel respectfully requests $1,137.50 for identifiable expenses, which include:

- the Eastern District of New York filing fee in this matter: $400.00
- the costs of mediation: $737.50

Plaintiffs' counsel respectfully requests one-third of the settlement amount less the above expenses ($68,862.50), or $22,954.66 in attorneys' fees, as agreed upon in the Plaintiff's retainer agreement with this firm. Therefore, if this request is approved, the total amount to be paid to the attorneys for their fees and expenses in this matter is $24,091.66.

**Settlement Amount:** $70,000.00
**Attorneys' Expenses:** $1,137.50
**Settlement less Expenses:** $68,862.50 ($70,000.00 - $1,137.50)
**Requested Attorneys' Fees:** $22,954.66 ($68,825.50 / 3)
**Total payable to Attorneys:** $24,091.66 ($22,954.66 + $1,137.50)
**Total payable to Plaintiff:** $45,908.34 ($70,000.00 - $24,091.66)

Our office and the Plaintiff have a retainer agreement that is reduced to writing and is signed by the Plaintiff. Attorneys' fees of 33% on FLSA and NYLL claims are routinely approved by courts in the Second Circuit. *See, e.g., Calle v. Elite Specialty Coatings Plus, Inc.,* 2014 U.S. Dist. LEXIS 164069 (E.D.N.Y. Nov. 19, 2014) (approving settlement of FLSA and NYLL claims stating that a "one-third contingency fee is a commonly accepted fee in this Circuit"); *Rangel v. 639 Grand St. Meat & Produce Corp.,* 2013 U.S. Dist. LEXIS 134207 (E.D.N.Y. Sept. 19, 2013). Courts in this District typically approve a fee of one-third or less of the settlement amount. *See Santos v. Yellowstone Props, Inc.*, 2016 WL 2757427 at *4 (S.D.N.Y. May 10, 2016).

This request for attorneys' fees is supported by the work performed by Plaintiff's counsel and the recovery secured through their efforts. Plaintiff's counsel has zealously advocated for their client throughout the negotiation process and believe that the settlement amount secured is a product of their efforts. Furthermore, the fee requested is reasonable in relation to the recovery received by Plaintiff.

### IV.  Closing

In closing, the parties believe that the settlement amount and the terms of the Agreement are fair and reasonable. The settlement was the product of good faith negotiations and the terms of the Settlement Agreement comport with Second Circuit case law. Both parties were represented by experienced and competent counsel who specialize in this area of law and the case was resolved with the assistance of the EDNY Court-annexed mediation program. As such, we respectfully request that the Court approve the Settlement Agreement in its entirety. We thank the Court for its consideration and remain available to provide any additional information.

Respectfully submitted,

*James O'Donnell*
James O'Donnell, Esq.